## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**MAVERICK MEDIA GROUP, INC.,**
**RICK BATEMAN, HAROLD GALLUP,**
**and GIL MANTER,**

        **Plaintiffs,**

v.                                      **Case No.  8:02-cv-947-T-23TBM**

**HILLSBOROUGH COUNTY, FLORIDA,**

        **Defendant.**

_____/


## <u>REPORT AND RECOMMENDATION</u>

THIS MATTER is before the court upon referral from the Honorable Steven D. Merryday for a Report and Recommendation on the parties' cross-motions for summary judgment: **Plaintiffs' Motion for Partial Summary Judgment** (Doc. 91) and **Memorandum of Law in Support** (Doc. 93) and Defendant's response (Doc. 96), and **Hillsborough County's Motion for Summary Judgment Against Plaintiff's Amended Complaint** (Doc. 92) and Plaintiffs' response (Doc. 97).  The parties have filed affidavits, excerpts of depositions, declarations, and other documentary evidence in support of their positions.[1]  <u>See</u> (Docs. 92-94, 97, 99, 118).  They have also filed supplements to their cross-motions for

_____

[1]Both parties have also filed a number of Notices of Supplemental Authority since filing their cross-motions for summary judgment.  <u>See</u> Plaintiffs' filings (Docs. 98, 100, 104, 105, 106, 120, 121, 127, 128, 130); Defendant's filings (Docs. 103, 122, 124, 129, 131); and Plaintiffs' responses to Defendant's filings (Docs. 123, 125, 132).

summary judgment in which they address the import of recent Eleventh Circuit authority.  <u>See</u> (Docs. 118-19).

By their motion, Plaintiffs seek summary judgment as to all claims except the appropriate amount of damages and attorney's fees.  Generally, Plaintiffs allege that the Defendant has wrongfully rejected or otherwise ignored numerous applications to post signs in Hillsborough County, Florida, on the basis of invalid sign regulations.  They seek an Order directing the Defendant to permit the posting of the requested signs and damages for the Defendant's infringement of their First and Fourteenth Amendment rights.  By its response and its cross-motion, Hillsborough County asserts that Plaintiffs have no standing to bring the bulk of their claims, and in any event, the claims are moot by reason of the adoption of new sign regulations in November 2004.  Even if the Plaintiffs have standing and the claims have not been rendered moot by the new regulations, Hillsborough County asserts that each of Plaintiffs' claims fail as a matter of law.


I.

A.

Maverick Media Group, Inc. (hereinafter "Maverick" or "Plaintiff"), is a corporation licensed to do business in the State of Florida and is headquartered in Hillsborough County, Florida.  It is an outdoor advertising business that buys and leases land upon which to construct signs used for the dissemination of both commercial and non-commercial speech.  Individual Plaintiffs, Rick Bateman, Harold Gallup, and Gil Manter are residents of

2

Hillsborough County and owners of Maverick.[2]  Hillsborough County, Florida (hereinafter "Defendant" or "County"), is a political subdivision of the State of Florida.

The essential facts are not disputed.  In 2002 and early 2003, Maverick submitted applications for signs to be posted in Hillsborough County.  None of the applications were granted; some were denied, and others received no response from the County.  The applications were reviewed, if at all, and processed under the County sign ordinance, Ordinance 85-19, first adopted in May 1985.  Pertinent to this case, the stated intent of the sign ordinance was to prohibit the future erection of billboards and "off-site signs" as such were determined to be "detrimental to the aesthetic sense and public health, safety and general welfare of the citizens of Hillsborough County."  The ordinance provided for an amortization period for existing signs to either achieve compliance with the ordinance or be removed.  Ordinance 85-19 was later incorporated into the County's Land Development Code (Ordinance 92-5 as amended).  The sign ordinance was thereafter referenced as the "sign regulations."

Maverick alleges that since at least 1999, it has sought to post advertising signs in Hillsborough County.  In late 2000 or early 2001, Maverick learned that the County was contemplating reaching agreements with Clear Channel Outdoor (f/k/a Eller Media Company) and Viacom Outdoor (f/k/a Infinity Outdoor).  Maverick sought to engage the County in discussions to provide it with similar opportunities to erect new signs in the County.  In 2001, the County entered into settlement agreements with both of the above-mentioned companies,

---

[2]Maverick and the individual Plaintiffs are collectively referred to herein as "Plaintiffs."

generally allowing them to retain billboards that existed and were legally permitted prior to 1985.[3]  The settlement agreements also permitted the relocation of these billboards, but prohibited the companies from having more billboards than existed and were legally permitted prior to 1985.[4]  Discussions with Maverick continued, but ultimately a proposed agreement was quashed by the County Commission.

On May 15, 2002, Maverick submitted to the County twenty applications for permits to post signs.  Ms. Kim King, a senior planning zoning technician for the County, denied each of Maverick's applications that same day on the ground that they were for prohibited off-site signs or billboard signs.[5]  Ms. King also advised Maverick's representatives that the applications were denied because there was no letter of authorization from a certified

---

[3]The settlements were precipitated by suits brought in federal and state court in February 2000 by Eller Media Company after the County brought enforcement action against nonconforming billboards.  Infinity Outdoor joined in the state court action.  According to the County, both companies had legally permitted billboards in place prior to 1985.  See (Docs. 26 Ex. A, B; 92, Ex. 2).  Since entering into settlement agreements with these two companies, it appears the County has entered into similar agreements with other parties who were able to establish that they had legally permitted billboards prior to 1985.  See (Doc. 59, Exs. F, G).

[4]Maverick asserts that, as a consequence of the settlement agreements, Clear Channel and Viacom have, during the pendency of this suit, posted signs that have "spaced out" Maverick's proposed locations pursuant to state law and that it has lost at least four sign locations based upon the erection of such new advertising signs by its competitors.

[5]Under the Hillsborough County Land Development Code at section 12.01.00, an "off-site sign" was defined as "[a]ny sign upon which advertising or any other matter may be displayed, advertising goods, services or other things not sold or available upon the parcel or only incidentally available where the sign is located."  (Doc. 99-6 at 29).  A "billboard sign" was defined as "[a] sign composed of a flat, continuous, and uninterrupted surface (including cut-outs) which measures seventy-two (72) square feet in aggregate sign area or more and upon which advertising or other matter may be displayed promoting goods, services or other things not sold or available upon the site where the sign is located . . . and includes a changeable copy sign."  (Doc. 99-5 at 9-10).

contractor.  By Ms. King's account, she advised Maverick that, in addition to being incomplete, their applications would not be accepted because they were for prohibited billboard and off-site signs.  According to her, it was the County's policy not to accept an application for a sign permit if it sought a type of sign prohibited under the sign regulations.  No written denial was provided to Maverick.  When asked for a written explanation of denial, Ms. King advised Maverick's representatives that she could not provide one and they would have to speak with her manager.  She later testified that it was not the County's normal practice to provide an explanation in writing for those things that constituted a prohibited use under the Land Development Code.

On the following day, May 16, 2002, Maverick's representatives returned with proof that they had obtained a certified local contractor to erect the proposed signs.  Mike Allgire, Ms. King's supervisor and the manager of the permits intake processing section for the County's planning and zoning division, met with Maverick's representatives and informed them that their sign applications would still not be accepted because they sought off-site signs and billboard signs, which were expressly prohibited under the sign regulations.  Although Mr. Allgire did not recollect whether Maverick's representatives had requested that he provide a written denial, he indicated that he would have refused to do so had they asked.  By Maverick's representation, Mr. Allgire refused to put the denials in writing.[6]

---

[6]At arguments on the County's motion to dismiss, the County stated that it issued a written denial some fifty days after Maverick submitted its applications.  Maverick denied that it received a written denial.

5

On May 23, 2002, Maverick submitted ten additional applications for permits to post signs, all of which were denied.  It appears undisputed that all the applications were for off-site advertising billboards.[7]  The circumstances of the denial or the refusal to accept is somewhat disputed.  According to Maverick, their applications were complete but were denied (not accepted) by Harry Heuman, the principal planner in the County's development services division, for the stated reason that signs with off-site messages were prohibited.  At a deposition in March 2005, Mr. Heuman could not recall any specifics from May 2002.  In connection with this litigation, in August 2004, Mr. Heuman submitted an affidavit stating he had reviewed the sign permit applications submitted by Maverick and concluded they were incomplete and lacked essential requirements under § 4.1.9 of the County's Development Review Procedures Manual, and thus, "a meaningful review of the applications [was] not possible because the sign applications submitted by Maverick [were] incomplete."  In any event, no permits were granted and Plaintiffs were not previously advised that the pending applications were denied.

Maverick did not appeal these denials, ostensibly because they were not in writing.

On May 30, 2002, Maverick initiated this action.

-------

[7]None of the applications Maverick submitted to the County for sign permits are before the court.  By Mr. Bateman's deposition testimony, Maverick no longer has any copies of the applications they submitted to the County.  (Doc. 93, Ex. A at 99).  However, Maverick has submitted thirty leases it entered into with land owners, which contemplated that Maverick would erect, illuminate and maintain *advertising billboards* on the landowners property.  Drawings attached to the leases illustrated billboards measuring 14' x 48'.  See (Doc. 1, Attachs.).  According to Mr. Bateman's testimony, these leases correspond to the two batches of thirty applications total that Maverick submitted to the County in May 2002.  (Doc. 93, Ex. A at 98).  The leases do not include the content contemplated for the billboards other than "advertising."

In July 2002, Maverick submitted approximately seventeen additional sign application packages. Ms. King accepted Maverick's applications. By Maverick's account, it was notified some forty-six to fifty-two days after submitting the applications that the applications were incomplete. Maverick subsequently resubmitted the applications, and it has yet to receive a response from the County. Ms. King claims little recollection of what occurred.[8] At deposition, she identified nineteen letters from September 2002, which were sent to the licensed contractors who applied for Maverick's permits, notifying them why the permits were not issued. It is Ms. King's recollection that a female representative of Maverick came into the office and completed the missing information. Regardless of the exact events, no permits were issued on these applications and there was no express denial of the permit applications.

In January 2003, Maverick submitted its last batch of fifteen applications to the County. Maverick contends that all of the applications were complete at the time of submission. Maverick represents that it has not yet received a response from the County and in any event, it is undisputed that no permits were issued on these applications.

Maverick also asserts that subsequent to their settlements, Clear Channel and Viacom have been permitted to post signs on applications granted under different requirements than those imposed on Maverick.

---

[8]According to Ms. King's deposition, during this period, the usual practice was to refuse to accept a permit application for a sign prohibited by the sign regulations. At some point, the County Attorney's Office directed them to accept applications from Maverick. She was unaware of time limits for processing applications but indicated that it normally took two to three weeks; if there was a problem with an application, the usual practice was to call the applicant. Ms. King testified that she became aware of the thirty-day processing requirement in or around 2003.

The County asserts that in November 2003, the Board of County Commissioners directed its staff to review the sign regulations to ensure they were consistent with the free speech guarantees of the Florida and United States Constitutions.  In November 2004, the County enacted new sign regulations, and the Board passed a resolution, which among other things, "renounc[ed] any intention to readopt the provisions of the Hillsborough County Sign Regulations in effect prior to the adoption."  See (Doc. 92, Ex. 4).

B.

The old sign regulations at issue here were contained within Article VII of the County's Land Development Code (hereinafter "Code") and included parts 7.00.00 through 7.06.02.[9]  The stated purpose of the sign regulations was to:

> A. . . . establish a set of standards for the fabrication, erection, use, maintenance and alteration of signs, symbols, markings, or advertising devices within Hillsborough County.  These standards are designed to protect and promote the health, safety and welfare of persons within the County by providing regulations which allow and encourage creativity, effectiveness, and flexibility in the design and use of such devices while promoting traffic safety and avoiding an environment that encourages visual blight.
>
> ***
>
> B. . . . prohibit the future erection, placement or location of off-site, portable, billboard and certain other types of signs determined to be detrimental to the aesthetic sense and public health, safety and general welfare of the citizens of Hillsborough County; to provide a reasonable amortization time period for existing signs to achieve compliance or removal in accordance with the provisions of the regulations; to ultimately

---

[9]The provisions of the old sign regulations are referred to herein by part or section number.  Parts 10.01-03, 10.05, 12 of the Code and §§ 4.0 and 4.1.9 of the Development Review Procedures Manual (hereinafter "DRP Manual") also are referred to herein.  All are set forth in Document 99.

> achieve a community environment that is totally free from all
> billboard signs, off-site signs, portable signs and certain other
> types of signs, through the application of reasonable regulations,
> amortization schedules and programs.

§ 7.00.02.

The ordinance set forth regulations governing four categories of signs: (1) signs exempt from the permit requirement; (2) signs expressly prohibited; (3) permitted temporary signs; and (4) permitted permanent signs.  See, e.g., §§ 7.01.00, 7.02.00, 7.03.00, 7.04.00.  All signs required a permit issued by the Administrator[10] unless exempted by the sign regulations.  See § 7.06.01A.

Signs exempt by the regulations from the permit requirement included, among others, professional nameplates and other types of occupational signs; government signs; flags, emblems, or insignia of any nation, state, or political subdivision; holiday, seasonal, or commemorative decorations that display no commercial advertising; memorial signs or tablets; directional signs in nonresidential districts; non-illuminated identification signs in residential districts; non-illuminated real estate signs; non-illuminated construction signs; and political campaign signs (with limitations).  See § 7.01.00.

Twenty-one categories of signs were expressly prohibited except as otherwise provided by the sign regulations.  These included, among others, flags, except those of any nation, state, political subdivision or corporate flag when not used for a commercial purpose; portable signs; *off-site signs; billboard signs*; and signs that bore or contained statements,

---

[10]Under the Code, "Administrator" was defined to "mean and be synonymous with the terms County Administrator, Zoning Administrator, Building Official, their designee, or any other official authorized in this Code to perform specific duties."  (Doc. 99, Ex. D at 2).

words or pictures of any obscene, pornographic, [or] immoral character.  See § 7.02.02 (emphasis added).  Also prohibited was any sign not erected, maintained, compatible with or not in compliance with county, state, or federal law.  See § 7.02.01.

As for permitted signs, six broad categories of signs were permitted on a temporary basis.  These included, among others, building and road construction signs; subdivision signs; signs announcing public or semi-public events and functions; signs announcing temporary, seasonal and new businesses; and certain on-site flags and balloons.  See § 7.03.02.  Three broad categories of permanent signs were allowed:  building signs in commercial and industrial districts; off-site directional signs used solely for the purpose of public service to indicate the direction or location of a major tourist destination, historic district, public institution, hospital, college, unique geographic area, or non-profit public service institution; and on-site signs.  See §§ 7.04.01, 7.04.02, 7.04.03.

The procedures for obtaining a sign permit were set forth in § 7.06.00.  That section provided that an application for a sign permit must be reviewed pursuant to the Procedure for Issuance of a Development Permit in Part 10.01.00 of the Code and § 4.1.9 of the DRP Manual.  See § 7.06.01.  Thus, the procedure for obtaining a sign permit was initiated by filing an application, along with the required submittals, which were then reviewed for completeness, as prescribed in Section 4.0 of the DRP Manual.  § 10.01.03.  Under Section 4.0, "[p]ermit reviews for complete application submittals which were determined to be incomplete may be delayed or terminated as prescribed herein unless appropriate information is submitted to bring application into conformance with submittal requirements herein."  DRP

Manual, § 4.0C.  No additional guidance on incomplete applications was provided in that

section.  Section 4.0 did provide that

> [w]ithin 30 business days (excluding County holidays) of
> receipt of a complete application, unless otherwise required
> herein, the Administrator shall review the proposal and decide
> whether to grant or deny the requested development permit.
> The Administrator's decision shall be in the form of a letter sent
> by registered mail to the applicant.

Id. at § 4.0D.[11]  Section 10.01.04 additionally required that "[t]he Administrator's decision

shall be based on whether the proposal complies with all applicable provision of this Code

and other County regulations."  Thereafter, if a permit was denied, the applicant could appeal

the denial.  Appeals were governed by Part 10.05.00 of the Code.  See §§ 7.00.03D, 10.05.01;

DRP Manual, § 4.0F.

　　　The new sign regulations (Ord. No. 04-47, § 2, adopted 11/9/04), repealed the old sign

regulations in their entirety.  (Doc. 118, Ex. 1 at 12 n.*).  The stated purpose of the new sign

regulations is as follows:

> To provide the minimum control of signs necessary to promote
> the health, safety, and general welfare of the citizens of
> Hillsborough County, Florida, by lessening hazards to
> pedestrians and vehicular traffic, by preserving property values,
> by preventing unsightly and detrimental signs that would detract
> from the aesthetic appeal of the county and lead to economic
> decline and blight, by preventing signs from reaching such
> excessive size or numbers that they obscure one another to the
> detriment of the County, by ensuring good and attractive design
> that will strengthen the county's appearance and economic base,
> and by preserving the right of free speech and expression in the
> display of signs.

---

[11]Inexplicably, the parties appear to ignore this section.

(Doc. 18, Ex. 1 at § 7.00.02).[12]  The new regulations address nonconforming signs and still contain categories of permitted, exempt, and prohibited signs, see id. at §§ 7.01.00-7.03.00, but there are notable changes and omissions in each.  Off-premises signs still are prohibited, see id. at § 7.02.02(J), but billboards are not listed as such.[13]  On-premises signs are permitted, but there are maximum sign areas for building signs and maximum height requirements for ground signs.  See id. at § 7.03.00(A), (B).  Permits for signs must still be obtained from the Administrator.  See id. at § 7.07.01(A).  Permit application review and time limits are set forth within the new sign regulations.  See id. at § 7.07.01(D), (E).  The Administrator must grant or deny a permit application within thirty days from the date the completed application was submitted for approval, and any person denied a permit for a sign may submit a written appeal of the denial within thirty days of the denial.  See id. at § 7.07.01(D), (G).  The new sign regulations also include a provision that states "Any sign permitted by these Sign Regulations may display a non-commercial message."  See id. at § 7.08.00.

## C.

A brief review of the procedural history of this case may prove useful.  As noted, Maverick filed suit in May 2002 challenging the constitutionality of the County's sign regulations.  The County filed a motion to dismiss the first ten counts for lack of standing and the takings claim as unripe, and the parties filed cross-motions for summary judgment.  In

---

[12]A copy of the new sign regulations is appended to the County's supplement to its motion for summary judgment.  (Doc. 118, Ex. 1).

[13]Nonetheless, the new regulations contain a general prohibition.  Pursuant to § 7.02.01, "[a]ny sign not permitted by these Sign Regulations is prohibited."

May 2004, a Report and Recommendation on the County's motion to dismiss recommended that the court deny the County's motion as to all counts except for Maverick's takings claim. (Doc. 55).  In November 2004, the district court adopted the Report and Recommendation in part, ruling that Plaintiff could challenge the effect on both commercial and non-commercial speech of the sign regulation's provisions forbidding off-site signs and billboards, but that Plaintiff did not have standing to bring the overbreadth challenge in light of the Eleventh Circuit's holding in <u>Granite State Outdoor Advertising, Inc. v. City of Clearwater, Florida</u>, 351 F.3d 1112 (11th Cir. 2003) (hereinafter "<u>Clearwater</u>").[14]  <u>See</u> (Doc. 83).  The court also directed Maverick to file and serve an amended complaint.  <u>Id.</u>  That same month, the County enacted new sign regulations.

In December 2004, Maverick filed an Amended Complaint in which its owners, Messrs. Bateman, Gallup, and Manter were added as parties to the lawsuit.  (Doc. 84). Pursuant to 42 U.S.C. § 1983, Plaintiffs now argue that the *old* sign regulations are

---

[14]The district court dismissed without prejudice Maverick's claims challenging the regulation's permitting procedures (Counts One, Two, and Ten) and its Fifth Amendment takings claim (Count Eleven), and (2) dismissed Maverick's overbreadth challenges to the regulation (Counts Six and Seven).  (Doc. 83 at 5).  The court left pending claims that the ordinance contained certain provisions that constituted unreasonable, overbroad, and unduly burdensome restrictions of the freedom to speak freely (Count Three); permitted officials to regulate both commercial and non-commercial speech in the absence of any rationale or findings in support thereof (Count Four); restricted or prohibited far more speech than could be justified by the stated purpose or any other legitimate governmental objectives (Count Five); contained several sections favoring the commercial speech of certain businesses while prohibiting other legal and truthful commercial information (Count Eight), and denied Maverick equal protection under the law (Count Nine).  <u>See</u> <u>id</u>.

unconstitutional under the First and Fourteenth Amendments of the United States

Constitution, both facially and as applied.[15]  As Plaintiffs allege the violations:

> (1) the ordinance is per se unconstitutional because it favors commercial messages over non-commercial messages, particularly as related to off site signs (Count One);
>
> (2) the ordinance restricts signs' display area size, height, number, time of display, and location without regard for the free speech interests involved and these restrictions are not narrowly tailored and do not leave open ample alternatives to advertising signs (Count Two);
>
> (3) the ordinance's permit requirements lack necessary procedural safeguards such as circumscribing the time in which government officials must grant or deny applications (Count Three);
>
> (4) the ordinance grants government officials virtually limitless discretion in deciding whether a sign will be allowed or not (Count Four);
>
> (5) several sections of the ordinance restrict fundamental methods of speech and constitute unreasonable, overbroad, and unduly burdensome restrictions on the freedom of citizens to speak freely (Count Five);
>
> (6) the ordinance is constitutionally invalid because it permits government officials to regulate commercial and non-commercial speech without including a rationale or findings to support its prohibition of speech (Count Six);
>
> (7) the ordinance is constitutionally invalid because it prohibits far more speech than can be justified by its stated purpose or any other legitimate governmental objectives (Count Seven);
>
> (8) the ordinance's prohibition of non-commercial off-site or billboard signs fails strict scrutiny (Count Eight);

------

[15]Plaintiffs also allege that the court has supplemental jurisdiction over its *state law claims* pursuant to 28 U.S.C. § 1367. Am. Compl. (Doc. 84 at 2, ¶ 6). However, none of the counts alleged by Plaintiffs are brought under state law, and the Florida Constitution is mentioned in passing on only a few occasions. See id. at 17, 19. In addition, Plaintiffs' requested remedies in each count are sought only under federal law. Accordingly, Plaintiffs' claims are not considered under state law.

(9) several sections of the ordinance are constitutionally invalid because they favor the commercial speech of certain businesses about certain commercial topics while prohibiting other legal and truthful commercial information (Count Nine);

(10) the ordinance impermissibly allows county officials to add permitting requirements on a case-by-case basis (Count Ten);

(11) the County has violated Maverick's right to equal protection by allowing the world's two largest outdoor advertising conglomerates to erect signs identical to those for which Maverick has unsuccessfully sought to erect (Count Eleven),

(12) certain provisions of the ordinance relating to criminal and civil liability are vague and ambiguous and thus violate due process (Count Twelve).

See Am. Compl. (Doc. 84).[16]

Generally, Plaintiffs do not identify with particularity which specific sections of the ordinance violate the Constitution but urge the violations are sufficient to warrant a declaration that the entire ordinance is unconstitutional.  Plaintiffs do not challenge any provision of the new sign regulations in their Amended Complaint.

In April 2005, the parties filed their instant cross-motions for summary judgment.  In December 2005, the court entered an Order (Doc. 111) staying the proceedings pending the Eleventh Circuit's en banc decision on rehearing in Tanner Advertising Group, L.L.C. v. Fayette County, Georgia, 411 F.3d 1272 (11th Cir. 2005), vacated, 429 F.3d 1012 (11th Cir. 2005), which held that a sign company had standing, under the overbreadth doctrine, to

---

[16]Plaintiffs supplement their Amended Complaint with a copy of the County's old sign regulations (entitled, "Hillsborough County Florida Sign Ordinance, Land Development Code as amended, Supplement No. 7, October 2001"), certain supplements to the regulations, pertinent sections of the County's Land Development that govern the sign regulations, and applicable sections of the County's DRP Manual.  See (Doc. 99, Exs.).

challenge those provisions of a sign ordinance that did not cause the injury alleged, i.e., those provisions under which the sign company's permit applications *were not* denied.  After the Eleventh Circuit rendered its *en banc* decision, and upon Plaintiffs' motion, the district court reopened the case in June 2006.  (Doc. 117).  Thereafter, the parties each filed a supplement to their motions for summary judgment addressing the import of the Eleventh Circuit's decisions in Tanner Advertising Group, L.L.C. v. Fayette County, Georgia, 451 F.3d 777 (11th Cir. 2006) (hereinafter "Tanner") and CAMP Legal Defense Fund, Inc. v. City of Atlanta, 451 F.3d 1257 (11th Cir. 2006) (hereinafter "CAMP").

## II.

### A.

The court shall grant summary judgment for the moving party only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The court may look to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," in determining whether summary judgment is appropriate.  Fed. R. Civ. P. 56(c).  The movant bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue of material fact.  See Celotex, 477 U.S. at 324;

Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir. 1994).  The non-movant must designate specific facts showing a genuine issue for trial beyond mere allegations or the party's perception.  See Perkins v. Sch. Bd. of Pinellas County, 902 F. Supp. 1503 (M.D. Fla. 1995).  It must set forth, by affidavit or other appropriate means, specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(e).

When deciding a motion for summary judgment, "[i]t is not part of the court's function . . . to decide issues of material fact, but rather determine whether such issues exist to be tried . . ." and "[t]he court must avoid weighing conflicting evidence or making credibility determinations."  Hairston, 9 F.3d at 919 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).  The only determination for the court in a summary judgment proceeding is whether there exists genuine and material issues of fact to be tried.  See id. at 921; see also Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 959 (11th Cir. 1997).  All the evidence and inferences from the underlying facts must be viewed in the light most favorable to the nonmoving party.  See Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997).

### B.

By their instant motion, Plaintiffs move for summary judgment on all issues except the appropriate amount of damages and attorney's fees to be awarded pursuant to 42 U.S.C. §§ 1983, 1988.  Plaintiffs maintain that by way of the district court's prior order on the County's motion to dismiss, their standing is established as to Counts Five, Six, Seven, Nine, and Eleven of the Amended Complaint.  As for the remaining seven counts, Plaintiffs contend

they have now demonstrated standing to challenge the County's permitting procedures and abuse of discretion in refusing to process sign applications, as well as the sign regulations in their entirety.  They assert constitutional defects because (1) the sign restrictions are content-based, (2) the ordinance is an impermissible prior restraint, (3) the permitting procedures under the ordinance grant County officials impermissible discretion, (4) under <u>Central Hudson Gas & Electric Corp. v. Public Service Commission</u>, 447 U.S. 557 (1980), the restrictions on commercial speech do not implement or advance a substantial interest and are not narrowly tailored, (5) the ordinance impermissibly regulates non-commercial speech based upon content, (6) the ordinance favors commercial speech over non-commercial speech, (7) the ordinance unduly burdens fundamental methods of speech (such as residential signs), (8) the ordinance is vague and violates due process, and (9) the ordinance violates equal protection. <u>See</u> (Docs. 91, 93).

By their supplement, Plaintiffs first argue that <u>Tanner</u> conclusively establishes their claims are not moot.  By this argument, Plaintiffs contend they have acquired vested rights to the applied-for sign permits because the County's actions in adopting new regulations more than two years after Plaintiffs filed suit and asserting a mootness defense constitutes bad faith under Florida law.  Plaintiffs also contend that under <u>Tanner</u> and <u>CAMP</u>, their claims for damages precludes a finding of mootness.  Plaintiffs contend further that <u>CAMP</u> supports their contentions of standing to assert a challenge to the permitting provisions of the old sign regulations and the lack of procedural safeguards thereunder, the provisions of the old regulations granting unfettered discretion to County officials to license speech, the exemptions

18

from the permitting requirements, the equal protection claim, as well as any provisions to which they have been or would indisputably be subjected.  Plaintiffs continue to maintain that they may pursue an overbreadth challenge to the old regulations.  Plaintiffs also contend that the individual Plaintiffs, Messrs. Bateman, Gallup, and Manter, have a stake in the suit independent of their ownership of Maverick and that all have standing to challenge the entirety of the old sign regulations, as each was automatically subjected to them as residents of the County.  Thus, Plaintiffs urge the court to enter partial summary judgment in their favor, require the County to authorize and permit Maverick to post the requested signs, establish Plaintiffs' entitlement to at least nominal damages, and set a date for trial on all factual issues, including a determination of the proper measure of actual or general damages. See (Doc. 119).

By its motion, the County moves for summary judgment as to each count of Maverick's Amended Complaint, pursuant to Rule 56.  As grounds, the County asserts generally that Plaintiffs lack standing to maintain certain challenges, their claims have become moot in light of its enactment of new sign regulations, and the old sign regulations challenged by Plaintiffs were constitutional, both facially and applied.[17]  See (Doc. 92).  On the matter of standing, the County argues more particularly that the individual Plaintiffs have no standing to maintain separate claims as they have suffered no injury-in-fact and are unable to establish any injury apart from that suffered by Maverick.  It urges Maverick has no standing to raise

---

[17]By way of a footnote, the County also requests that the court dismiss Plaintiffs' Amended Complaint as a "shotgun pleading" even though Plaintiffs have already had an opportunity to amend their initial Complaint.

the claims in Counts Three and Ten, generally arguing that there is no standing to raise issues related to permitting.  It also contends that Maverick has no standing to raise an overbreadth argument or a vagueness claim as attempted in Count Twelve.  The County concedes Maverick's standing to raise the claims in Counts One, Two, Five, Six, Seven, Eight, and Nine of the Amended Complaint, but only to the extent the counts "relate to the County's content neutral prohibition on off-site signs, billboards, and height and size limitations."  Counts Four and Eleven are not addressed by the County's motion.  See (Doc. 92).

In its supplement, Defendant argues that the application of Tanner renders moot Counts One, Three, Four, Six, Seven, Eight, Nine, Ten, and Twelve of Plaintiffs' Amended Complaint because, at the time the Amended Complaint was filed, the new sign regulations were already in effect and certain of the challenged provisions in the old sign regulations no longer existed.  Defendant also argues that Plaintiffs have no claim for damages as to those counts rendered moot by the new sign regulations; by Defendant's argument, there can be no prospective claim for damages because the new sign regulations did not exist at the time Plaintiffs allege they were damaged.  As for the prior restraint claim in Count Five, the County argues that to the extent the claim is based on a lack of time limits, the claim is rendered moot by the new sign regulations, which contain such limits.  Alternatively, it argues that under CAMP, time limitations are not unconstitutional prior restraints.  Similarly, as to the claims by Plaintiffs in Count Two that the sign regulations are not narrowly tailored and

thus constitute an impermissible prior restraint, Defendant argues under <u>CAMP</u> that there is no unconstitutional prior restraint.[18]   <u>See</u> (Doc. 118).

III.

A.

The court must address threshold jurisdictional issues before analyzing a plaintiff's constitutional claims.  <u>See</u> <u>Coral Springs St. Sys., Inc. v. City of Sunrise</u>, 371 F.3d 1320, 1327 (11th Cir. 2004).  Accordingly, the issues presented on the instant motions pertaining to standing and mootness are addressed first.

To demonstrate the Article III requirements of standing, a plaintiff who invokes the jurisdiction of a federal court bears the burden of demonstrating: (1) an injury in fact, one that is concrete and particularized, and actual or imminent;[19] (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992); <u>CAMP</u>, 451 F.3d at 1269; <u>Bischoff v. Osceola County, Fla.</u>, 222 F.3d 874, 883 (11th Cir. 2000).  "Each element is 'an indispensable part of the plaintiff's case' and 'must be supported in the same way as any other matter on which the plaintiff bears the burden of

---

[18]Because neither <u>CAMP</u> nor <u>Tanner</u> addressed an equal protection claim, the County rests on its argument set forth in its Motion for Summary Judgment (Doc. 92 at 18-20) and response (Doc. 96 at 8-11) to Plaintiffs' Motion for Partial Summary Judgment and does not address Count Eleven in its supplement.  (Doc. 118 at 10).

[19]"An 'injury in fact' requires the plaintiff to 'show that he personally has suffered some actual or threatened injury.'"  <u>CAMP</u>, 451 F.3d at 1269 (quoting <u>Clearwater</u>, 351 F.3d at 1117)).

21

proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" CAMP, 451 F.3d at 1269 (quoting Lujan, 504 U.S. at 561).  Thus, at this stage of the litigation, Plaintiffs must set forth by affidavit or other evidence specific facts to establish standing.  See id.

If these requirements are met, judicially created prudential limitations may nonetheless defeat a party's standing to maintain a suit.  See CAMP, 451 F.3d at 1270.  One such consideration is that a plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights of interest of third parties."  Id. (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)).  Under the overbreadth doctrine, however, the Supreme Court has created a limited exception to this general requirement to allow a plaintiff to challenge the facial validity of a statute on the grounds of its substantial infringement on the First Amendment interests of others not before the court.  Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 505 n.11 (1981); Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 797-98 (1984) (citing Thornhill v. Alabama, 310 U.S. 88, 97-98 (1940)); CAMP, 451 F.3d at 1270.  The overbreadth doctrine, however, does not relieve a plaintiff from establishing constitutional standing.  CAMP, 451 F.3d at 1270.  "Rather, the overbreadth doctrine simply allows a plaintiff to bring a facial challenge to a provision of law that causes [its] injury, regardless of whether the provision's regulation of [its] conduct in particular was constitutional."  KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1267 (11th Cir. 2006).  Applying this standard, I reach the following conclusions.

(1)

Regarding the standing of the individual Plaintiffs, Messrs. Bateman, Gallup, and

Manter have failed to demonstrate that they have direct standing independent of their interest

in Maverick.  The undisputed evidence reveals that, aside from the sign permit applications at

issue in this case, the individual Plaintiffs have not applied for any other sign permits in the

County or put up any other signs in the unincorporated part of the County on their own behalf.

See Dep. Bateman (Doc. 93, Ex. A at 66-67, 94-95); Dep. Gallup (Doc. 94-4 at 15); Dep.

Manter (Doc. 94-5 at 25).  The record is devoid of evidence that the individual Plaintiffs

desired to post any commercial or non-commercial signs at all other than billboards of the

type sought by Maverick.  The individual Plaintiffs also fail to point to any political or other

non-commercial speech that has been "chilled" as a result of the old sign regulations.

Although they urge that as residents of the County they have a personal stake in the outcome

of this litigation independent from their ownership in Maverick, the evidence does not bear

that out.  At this point in the litigation, the allegations in the Amended Complaint, standing

alone, are insufficient.[20]  See CAMP, 451 F.3d at 1269 (quoting Lujan, 504 U.S. at 561).

Plaintiffs' reliance on Kennedy v. Avondale Estates, Georgia, No. 1:00-cv-1847-JEC (N.D.

Ga. 2005), is misplaced.  Although the trial judge in that case noted that the plaintiffs "live

---

[20]In an attempt to create individual standing, the Amended Complaint alleges that the individual Plaintiffs have sought for years to post and view commercial and non-commercial messages on signs that are prohibited by the County, the regulations have deprived them of the ability to post and view protected speech on signs, they have refrained from posting messages due to the County's enforcement of its sign regulations, and they seek to post signs on the property they own or lease within the County without fear of civil or criminal citation or forfeiture of property.  No evidence, by affidavit or otherwise, supports these allegations.

23

and work under the City's ordinance, and clearly have a personal stake in the outcome of the controversy," the plaintiffs also demonstrated a desire to support political candidates by displaying signs, and one plaintiff was a real estate agent who advertised her business and the availability of her client's property by posting signs on her client's property.  See id. at 18-19, 32.  Evidence was also produced in that case demonstrating the city had actually enforced its sign ordinance by informing residents that they must remove signs and issuing summonses for violations.  Id. at 19.  There is no such evidence in this case.  In any event, this court is not bound by that authority.  In sum, I find the individual Plaintiffs have failed to establish direct or as-applied standing independent of their interest in Maverick.

I likewise conclude that the owners of Maverick have no standing independent of their interest in the sign company to assert *facial* challenges to provisions of the County's old sign regulations.  To paraphrase the Eleventh Circuit in CAMP, nothing in the overbreadth doctrine allows a plaintiff to challenge provisions wholly unrelated to his activities; rather, a plaintiff must show that he has sustained or is immediately in danger of sustaining a direct injury as the result of' each provision in the sign ordinance.  CAMP, 451 F.3d at 1274 (quoting Laird v. Tatum, 408 U.S. 1, 13 (1972)).  Further,

> What a plaintiff must prove to establish standing 'depends on the nature of the challenge to his or her standing.'  Bochese, 405 F.3d at 976.  The Supreme Court has 'long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license.'  City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 755-56 (1988).  The challenged provision 'must have a close enough nexus to expression, or to conduct commonly

> associated with expression, to pose a real and substantial threat
> of the identified censorship risks.' Id. at 758.  If it is 'one who
> is subject to,' id. at 755, or imminently will be subject to, the
> provisions that allegedly grant unbridled discretion, then CAMP
> has standing to challenge those provisions.

CAMP, 451 F.3d at 1274.  Where as here, a plaintiff alleges that a statute grants unbridled

discretion, a plaintiff must demonstrate he is or may be "subject to" the provision to establish

a constitutional injury.  See id. at 1275 (quoting Lakewood, 486 U.S. at 755-56).

Here, regardless of which provisions of the old regulations the individual Plaintiffs

challenge as granting unfettered discretion to County officials (and it is not at all clear by the

Amended Complaint which ones these are), they do not have standing to facially challenge

them.  Messrs. Bateman, Gallup, and Manter have failed to demonstrate that they are "subject

to" the provisions of the old sign regulations that allegedly grant unbridled discretion to

officials.  They offer no testimony establishing that they have applied for a sign permit or

intended to apply for one independent of their interest in Maverick or were otherwise likely to

be subjected to the unbridled discretion of the County under the old regulations.

The individual Plaintiffs also failed to present evidence demonstrating their standing

to bring facial challenges to provisions of the old sign regulations that allegedly impose

unconstitutional prior restraints.  As instructed by the court in CAMP, to establish an injury in

fact under Lujan based on chilled expression, a plaintiff must show either that it was

threatened with prosecution, prosecution is likely, or there is a credible threat of prosecution.

See CAMP, 451 F.3d at 1276.  Additionally, when challenging a prior restraint on speech, the

plaintiff must show that the challenged provisions pertains to its activities, and not merely that

it is "subject to the law." See id. (quoting Lakewood, 486 U.S. at 755-56).  Here, Messrs. Bateman, Gallup, and Manter have presented no evidence that any of the challenged provisions in the old sign regulations apply to the permits they seek because there is no evidence that they have sought permits or intended to seek permits aside from those sought by Maverick.  Moreover, the Plaintiffs point to no provision in the old regulations addressing the threat or potential threat of prosecution.  Accordingly, for the reasons set forth above, I recommend that the court grant Defendant's motion for summary judgment on all claims asserted by the individual Plaintiffs who lack standing apart from their interests as owners of Maverick.

(2)

Regarding Maverick's standing to bring this action, here it is undisputed that the first two groups of applications for sign permits were rejected by the County on the basis that they sought prohibited off-site, billboard signs.  As for the last two submissions, it is undisputed that each application sought a permit for an off-site billboard and that the County neither expressly granted nor denied any of the applications.  Maverick therefore, demonstrates their standing to raise as-applied challenges to the provisions of the old sign regulations prohibiting off-site and billboard signs, §§ 7.02.02(P) and (Q).  As vendors of signs that promote commercial and non-commercial messages, Plaintiff has arguably suffered an injury-in-fact by way of the County's blanket denial and/or refusal to consider the permit applications by reason of the off-site and/or billboard prohibitions.  Additionally, the permit denials (express and implied) undoubtedly were caused by the conduct complained of, and, if Plaintiff

succeeds on the merits, its injury likely would be redressed by a favorable decision (e.g., actual or nominal damages as addressed below).  Accordingly, Plaintiff has standing to directly challenge those provisions of the sign regulations related to the off-site and billboard provisions.  Plaintiff may also facially challenge the effect of such provisions barring off-site signs and billboards on both commercial and non-commercial speech as such challenges are raised in Counts One, Two, Six, Seven, and Eight.  See KH Outdoor, LLC, 458 F.3d at 1267.

Under recent case law in this circuit, Plaintiff fails to establish standing to argue either an as-applied or a facial challenge of the provisions that it alleges grant unbridled discretion to County officials as alleged in Counts Three, Four and Ten.  By Count Three, Plaintiff challenges the permitting requirements contained in the old regulations that allegedly *lack* necessary procedural safeguards, such as the time within which County officials must grant or deny permit applications and a provision allowing the applicant to post its requested sign if the permit is not granted or denied within a limited time.[21]  (Doc. 84 at 23, ¶ 70).  In Count Four, Plaintiff challenges certain provisions of the old regulations that allegedly grant unbridled discretion in determining whether or not a sign permit will issue.  The allegations

_____

[21]With respect to the appeals procedures governing the sign regulations, I find that Plaintiff has failed to adequately allege the claim.  The Amended Complaint alleges "the appeals process is equally bereft of real time limits," see (Doc. 84 at ¶ 37), and that "the County does not allow any appeal to be brought in regard to a sign application until a response has been obtained from County officials."  See id. at ¶ 50.  Notably, there are no further allegations regarding the appeals process in the Amended Complaint, including those set forth in the various counts.  Therefore, I cannot conclude from the Amended Complaint that Plaintiff challenges the appeals process and therefore do not reach the issue of standing with respect to it.  Should the trial judge disagree, I find that Plaintiff would not have standing to challenge the appeals process as applied but could facially challenge the provisions as overly broad.

would appear directed at provisions such as the following which permit impermissible discretion to County official in determining whether an exemption applies:  § 7.04.02(A) (permitting the County Administrator to determine whether an off-site directional sign is exempted from the general off-site ban); § 7.01.00(D) (which fails to include objective standards to determine what content qualifies as holiday, seasonal or commemorative decoration); 7.01.00(R) (which fails to contain objective standards as to what groups fall within public, charitable, educational or religious institutions); 7.02.02(R)(1) (which allows officials discretion to determine whether a sign is obscene); 7.03.02(D) (which fails to reference what types of signs qualify as "public" or "semi-public" signs); and 7.03.02(F) (which gives officials discretion to determine whether flags and balloon signs "may" be temporarily permitted).  See (Docs. 84 at 15, ¶ 40; 93 at 7-8, 119 at 6-7).  In Count Ten, Plaintiff complains that County officials have unfettered discretion to add permitting requirements on a case-by-case basis and did in fact do so with respect to Maverick's applications.  Here, the particular additional requirements allegedly imposed on the Plaintiff are not set forth with specificity, although Maverick does suggest generally that it was required to submit more information than its competitors, Clear Channel and Viacom, once they reached settlements with the County.

Where a licensing statute allegedly grants unbridled discretion in a government official over whether to permit or deny expressive activity, "one who is subject to" or "imminently will be subject to" the provision may challenge the law facially even without the necessity of having first applied for and been denied a license.  See CAMP, 451 F.3d at 1275 (citing

Lakewood, 486 U.S. at 755-56).  Despite this seemingly liberal grant of standing, Maverick

has no standing to contest the alleged lack of time requirements or those provision purportedly

allowing County officials unbridled discretion in the permitting process as it has not been

"subject to" these provisions.  This is so because all of Plaintiff's permit applications were for

billboards.[22]  This fact is significant because billboard signs were categorically barred under

the old sign regulations.  County officials had no discretion in denying these permits and

Maverick's application were wholly unaffected by the allegedly offending provisions.

Contrary to its assertions, Plaintiff's circumstances differ from those in CAMP, where

government officials had (unbridled) discretion in granting festival permits of the type CAMP

demonstrated it could and would lawfully seek and where the applicable provisions of the

ordinance lacked the necessary criteria to channel the officials' discretion.  Here, County

officials did not have to consider whether the applicant fell within an exemption because the

old regulations allowed for no exemptions for the type of billboards that Maverick sought to

post.[23]

---

[22]The Amended Complaint sets forth that Maverick sought to post industry standard advertising signs measuring 14 feet by 48 feet in size.  See (Doc. 84 at ¶ 19).  A review of the leases entered into by Maverick indicate that it sought to post signs measuring 14" x 48'.  See (Doc. 1, Attachs.).  As noted above, the old regulation defined a billboard sign as measuring 72 square feet in aggregate sign area or more.  Thus, by their size, Plaintiff's signs were clearly billboards under the old regulations.

[23]Had Plaintiff demonstrated that it sought to post off-site signs other than billboards or that its future applications would otherwise be subject to the challenged provisions, they arguably would be permitted to challenge the complained of sections of the old regulations, particularly the exemptions to the permitting requirements as was the case in CAMP. However, nothing in the evidentiary record establishes that Plaintiff was a person subject to or affected by the allegedly offensive provisions of the regulations.  Notably, Maverick was not subject to the exceptions to the prohibitions on off-site signs found in § 7.04.02 of the old

To the extent that the County modified the permit application process in favor of Clear Channel or Viacom as a consequence of their settlements, the facts may help support Plaintiff's equal protection claim, but I do not think that they support the argument that the old regulations permitted officials to add or change the permit application requirements on Maverick.  Rather, the applications Plaintiff submits to support these allegations reveal that Clear Channel, Viacom, and other entities who had legally existing billboards prior to 1985 and a settlement regarding such with the County may not have received the same type of review as did Maverick's applications because their applications were for "structural review only."  (Doc. 73, Exs. C, D).

While Maverick's challenge to the permitting procedures *is* more problematic under the Amended Complaint because the County did accept two batches of Maverick's permit applications that it has yet to respond to, that does not negate the fact that the billboards sought by these applications were likewise prohibited under the old regulations.  To this end, the County persuasively argues that Maverick cannot attempt to establish standing by continuing to submit applications (even if accepted and not denied) for signs that it knew were prohibited.  By the persuasive authority in this circuit, that Plaintiff sought to post only banned billboards forecloses its ability to challenge permitting provisions or exemptions to which it was not subject and therefore it cannot show the necessary injury in fact.  See, e.g., CAMP,

---

regulations because the evidence submitted by Maverick reveals that it sought permits for signs measuring 14' x 48', the size of which clearly exceeds the size limitations contained in the excepted off-site directional signs provisions.  See, e.g., §§ 7.04.02(B)(6), (C)(6), (D)(2), (E)(2), and (F)(2).  Plaintiff also fails to demonstrate with competent evidence that County officials indiscriminately added or changed the requirements of the permit applications in their case.

451 F.3d at 1274-75; Granite State Outdoor Adver. Inc. v. City of Ft. Lauderdale, No. 05-12531, 2006 WL 2560679, at *2-3 (11th Cir. 2006) (unpublished); Granite State Outdoor Adver., Inc. v. Cobb County, No. 05-11100, 2006 WL 2373528, at *5 (11th Cir. 2006) (unpublished); Advantage Adver., LLC v. City of Hoover, No. 04-16224, 2006 WL 2344957, at *4 (11th Cir. 2006) (unpublished).[24]

Plaintiff also fails to demonstrate standing to facially challenge the old regulations as alleged in Count Five. By that count, Plaintiff cites City of Ladue v. Gilleo, 512 U.S. 43, 58 (1994), and broadly alleges that several sections of the old regulations place an unconstitutional burden on property holders, such as the individual Plaintiffs, to communicate commercial or non-commercial speech. It appears that Plaintiff here takes umbrage with several sections of the ordinance including §§ 7.02.02(C) (prohibiting banners, pennants, festoons, searchlights, twirling signs, sidewalk or curbside signs, balloons or other gas-filled figures, or other inflatable signs), § 7.02.02(D) (prohibiting flags, except those of any nation, state, political subdivision, or corporate flag when not used for a commercial purpose), and §§ 7.04.03(A), (B)(1)-(3) (setting forth general regulations applying to on-site signs). See (Doc. 93 at 16).[25] By its argument, these provisions render the ordinance overbroad and leave

---

[24]Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent but may be cited as persuasive authority.

[25]Plaintiff does not cite to these sections in its summary judgment memorandum. Rather, it references the memorandum for preliminary injunction (Doc. 26), which is not presently before the court. It is that pleading that contains the cited sections in the context urged herein. See (Doc. 26 at 12-13). While the Amended Complaint mentions those sections, Plaintiff's reference to the section in the memorandum for preliminary injunction helps inform me of its argument.

virtually no avenue by which citizens can speak freely on signs.  Beyond the fact that I have found that the individual Plaintiffs have no standing as such, neither they nor Maverick offer any evidence to establish that they have suffered or will suffer an injury under these or similar provisions.[26]

Likewise, Plaintiff fails to demonstrate standing to facially challenge the old regulations as alleged in Count Nine.  By this count, Plaintiff alleges that several sections of the old regulations are invalid because they favor the commercial speech of certain businesses about certain commercial topics while prohibiting other legal and truthful commercial information.  (Doc. 84 at 29-30, ¶ 95).  Thus, Plaintiff appears to complain that County officials have the discretion to allow signs for favored businesses or causes, and they cite to §§ 7.04.02(A)(1) (generally allowing "off-site directional signs" but only if content "indicate[s] the direction or location of a major tourist destination, historic district, public institution, hospital, college, unique geographic area or non-profit public service institution"); 7.04.02(B) (off-site directional ground signs); and 7.04.02(C) (off-site directional pole signs). See (Doc. 93 at 12-13).  All such off-site directional ground and pole signs are restricted as to size.  See §§ 7.04.02(B)(6) (off-site directional ground signs may have an aggregate sign surface area of 72 square feet, but no single sign face may exceed 36 square feet in aggregate sign surface area); 7.04.02(C)(6) (total height of any off-site directional pole sign and the sign structure upon which it is mounted shall not exceed 16 feet, as measured from the pavement

---

[26]To the extent that Ladue identifies the two analytical grounds for challenging the constitutionality of a municipal ordinance regulating the display of signs, it remains pertinent to the claims for which Plaintiff has standing in this case.  See Ladue, 512 U.S. at 50-51.

32

edge to the highest point of the sign structure).  Here, the only evidence Plaintiff submitted reveals that it sought to post only industry standard billboards, the sizes of which greatly exceed those required for off-site directional ground or pole signs.  Thus, Plaintiff fails to provide any evidence, by affidavit or otherwise, that it is subject to those provisions for permitted off-site signs and is therefore unable to show an actual or threatened injury-in-fact.

Plaintiff demonstrates standing to bring its equal protection claim set forth in Count Eleven.[27]  By that count, Plaintiff contends that the County's[28] determination that Viacom and Clear Channel may erect signs identical in all respects to those applied for by Maverick violates their right to equal protection.  Plaintiff arguably has suffered an injury-in-fact because it is unable to post its off-site billboards while Viacom and Clear Channel have been able to post the same.  There is a causal connection between the injury and the complained of conduct, and, if Plaintiff succeeds on the merits, its injury would likely be redressed by a favorable decision.

Finally, I conclude that Plaintiff fails to establish standing to bring the due process claim asserted in Count Twelve.  By that count, Plaintiff challenges § 7.02.02(R)(1) of the old sign regulations, which prohibited any sign that "bears or contains statements, words or pictures of any obscene, pornographic, [or] immoral character."  <u>See</u> (Doc. 91 at 16).  Plaintiff

---

[27]Defendant does not contest standing on this claim.

[28]Although it is presented in different ways in the pleadings, I understand Maverick's complaint to be that the County's favoritism in permitting Viacom and Clear Channel to maintain their offsite billboard signs while barring Maverick from the same is a denial of Maverick's rights to equal protection.

again fails to provide evidence demonstrating that it was injured under that provision. Further, because Plaintiff's permit applications were denied on the basis that it sought prohibited offsite and/or billboard signs, neither a causal connection nor redressability can be established.

Upon these findings and conclusions, I recommended that the court grant Defendant's motion for summary judgment and deny Plaintiffs' motion for partial summary judgment as they relate to Counts Three, Four, Five, Nine, Ten, and Twelve.

### B.

As noted above, Defendant claims that the County's adoption of the new sign regulations, which repealed the old sign regulations, renders moot Counts One, Three, Four, Six through Ten, and Twelve of the Amended Complaint. Plaintiff counters that its claims are not moot because it had acquired vested rights in the sign permits and its claim for damages precludes a finding of mootness.

Because Article III of the Constitution requires that there be a live case or controversy at the time the federal court decides a case, the doctrine of mootness provides that "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Tanner, 451 F.3d at 785 (quoting U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980)). This is a threshold issue; if a suit is moot, it cannot present an Article III case or controversy, and the court lacks subject matter jurisdiction to entertain it. Seay Outdoor Adver., Inc. v. City of Mary Esther, 397 F.3d 943, 946 (11th Cir. 2005) (citing Coral Springs St. Sys., Inc., 371 F.3d at 1328). Mootness can

occur due to a change in circumstances or a change in the law.  Id.  "When a party challenges a law as unconstitutional and seeks only declaratory and prospective injunctive relief, a 'superseding . . . regulation moots a case . . . to the extent that it removes challenged features of the prior law.'"  Crown Media, LLC v. Gwinnett County, Ga., 380 F.3d 1317, 1324 (2004) (quoting Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1310 (11th Cir. 2000)).

There are, however, exceptions to mootness.  For example, if a plaintiff has a vested property right in a sign or permit [application], it constitutes an enforceable entitlement unaffected by subsequent changes in sign regulations and may keep a constitutional challenge to repealed regulations from becoming moot.  Crown Media, LLC, 380 F.3d at 1325.  Additionally, when a plaintiff seeks damages as opposed to only declaratory or injunctive relief, changes to the challenged regulations may not necessarily moot the plaintiff's constitutional challenge to the regulations.  Crown Media, LLC, 380 F.3d at 1325 (citing Clearwater, 351 F.3d at 1119, and Naturist Soc'y, Inc. v. Fillyaw, 958 F.2d 1515 at 519 (11th Cir. 1992)); Clearwater, 351 F.3d at 1119 (recognizing that "[b]ecause Granite State has requested damages . . . the changes made to the ordinance do not make this case moot.").

Plaintiff urges that Tanner conclusively establishes that its claims are not moot.  First, this is so because Maverick claims a vested property right in the permits for which it applied.  As stated in Tanner:  "A party's vested property rights constitute an enforceable entitlement to a permit or a sign unaffected by subsequent changes in sign ordinances and may keep a constitutional challenge to a repealed sign ordinance from becoming moot under federal law."

Tanner, 451 F.3d at 787 (quoting Crown Media, LLC, 380 F.3d at 1325).  Plaintiff contends that the County's adoption of the new sign regulations two years after it filed suit so as to moot its claims is a clear display of bad faith, which under Florida law gives it vested rights in the permits.  By this argument, given its vested property rights in the permits, if the old sign regulations are determined to be unconstitutional, the new sign regulations would not bar this court from ordering the County to allow Maverick to post the signs for which it had applied for permits.  Secondly, Plaintiff argues that Tanner reaffirms the well-established rule that its claim for damages precludes a finding of mootness.  By this rule, "[w]hen a plaintiff requests damages, as opposed to only declaratory or injunctive relief, changes to or repeal of the challenged ordinance may not necessarily moot the plaintiff's constitutional challenge to that ordinance."  Tanner, 451 F.3d at 785 (quoting Crown Media, LLC, 380 F.3d at 1325).

To the contrary, the County argues that Tanner and other binding precedent confirms its argument that all but Counts Two and Eleven of the Amended Complaint have been rendered moot by the adoption of the new sign regulations because "[o]rdinarily, 'a challenge to the constitutionality of a statute is mooted by repeal of the statute.'"  Tanner at 785 (quoting Coral Springs St. Sys., Inc., 371 F.3d at 1329).  The County advances three arguments in further support of its position.  First, it argues that the voluntary cessation doctrine does not save Plaintiff's claims from being moot because the evidence demonstrates that the County will not reenact the old sign regulations.  Second, relying on Coral Springs St. Sys., Inc., Seay Outdoor Adver., Inc., and National Advertising Co. v. City of Miami, 402 F.3d 1329 (11th Cir. 2005), Defendant contends that Plaintiff cannot establish that its claims are justiciable

36

because it does not have vested right in its sign permit applications.  By this argument, the

County claims that Plaintiff cannot demonstrate that it acted in good faith reliance upon any

act or omission of the County and it is unable to demonstrate that the County acted in bad

faith.  Substantively, the County urges that Plaintiff's claims are moot because the new

regulations eliminated all of Plaintiff's alleged concerns, including any content-based

distinctions and any alleged preference for commercial over non-commercial speech.

Regarding Plaintiff's claim for damages, the County, citing Tanner, appears to argue that

Plaintiff's claim for damages on counts raising facial challenges to provisions of the old sign

regulations that were corrected by the new sign regulations are barred.

Addressing the County's contentions, given the record before the court, it is correct

that in the circumstances of this case, the doctrine of voluntary cessation does not save

Plaintiff's claims from a mootness determination regardless of the delay in repealing the old

sign regulations.  The determination of whether the repeal of a law will lead to a finding that

the challenge to the law is moot "depends most significantly on whether the court is

sufficiently convinced that the repealed law will not be brought back."  See Coral Springs St.

Sys., Inc., 371 F.3d at 1331.  Here, what little evidence there is in the record favors the

County.  Thus, the Defendant offers some proof that there is no reasonable likelihood that the

challenged regulations will be reenacted as evidenced by a resolution adopted by its Board of

County Commissioners affirming that it will not reenact the old sign regulations or any sign

regulations in violation of the First Amendment, see (Doc. 92, Ex. 4), and Plaintiff does not

contend otherwise.  Here, while I find that the resistance to and the delay in the County's

repeal of the old sign regulations are reasons to take pause on this issue, case law dictates that governmental entities "have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities." Coral Springs St. Sys., Inc., 371 F.3d at 1329.  Here, in repealing the old regulations and adopting new sign regulations, the County has expressly disavowed the prior regulations and committed to abiding by the First Amendment.  Absent any showing to the contrary by the Plaintiff, the voluntary cessation doctrine will not preclude a determination that its claims are moot.

Defendant's contention that Plaintiff has failed to establish a vested right in the sign permit applications is problematic.  Plaintiff does not contend that it relied upon existing law to its detriment thereby creating the conditions of equitable estoppel.  Rather, at issue here is whether Plaintiff has vested property rights in the sign permit applications by reason of the Defendant's alleged bad faith.

Whether a plaintiff has obtained a vested property right in a sign or permit [application] is a question of state law.  Id. at 1333-34.  To claim a vested right under Florida law, a plaintiff must show that (1) it has reasonably and detrimentally relied on existing law (equitable estoppel), or (2) the government defendant has acted in a clear display of bad faith. Id. at 1334.  Bad faith has been found where a municipality's conduct is an "arbitrary," "hasty," "blatant," or "obvious" attempt to "single out" an applicant to avoid granting a permit or facing a legal challenge.  Id. at 1336-38.  Specifically, Florida courts have found vested rights in limited circumstances in which the defendant municipality acted in obvious bad faith in denying a permit: (1) where the municipality deliberately and arbitrarily withholds a permit

38

until after a change in the law, and (2) where the municipality waits to amend a law until after it has been sued and a court has ordered it to grant an application previously denied based on the unconstitutional law.  See id. at 1336-38 (surveying Florida law as to whether a party has acquired a vested right to, among other things, a sign permit).  Although bad faith may be evidenced by amendment or repeal of a challenged law after suit is filed, the timing of the amendment or repeal is not conclusive.  Id. at 1337.

The facts pertinent to this analysis are essentially undisputed.  According to Mr. Bateman, Maverick became aware in 2000 or early 2001 that the County was contemplating reaching agreements with Eller (Clear Channel) and Infinity (Viacom) whereby those companies would be permitted to erect new advertising signs in the County.  At some point thereafter, Maverick began discussions with the County that would have afforded Maverick a small portion of those opportunities.  (Doc. 73, Ex. A).  Despite months of ensuing discussions, the County ultimately voted not to afford Maverick opportunities for new sign locations.  Id.  Maverick then filed the instant suit in May 2002.

Beginning at least in October 2003, the parties engaged in another attempt to settle the matter.  According to the County, one month later the Board of County Commissioners directed County staff to review the old sign regulations to ensure that they were consistent with the free speech guarantees of the Florida and United States Constitution.[29]  In January 2004, counsel for the County advised the court that the Board of County Commissioners

---

[29]Despite the County's allegations, the court has been unable to find testimonial evidence of this dated directive in the record.  Nonetheless, Plaintiff does not appear to dispute this assertion.

conditionally approved the posting of eighteen signs by Maverick, and that a matter of another eleven signs was unresolved; however, these negotiations fell through on or before March 2004.

Also in January 2004, to ensure that the old sign regulations were consistent with those guarantees, as well as the goals and objectives of Hillsborough County, the County enacted Ordinance 04-01, which abated the filing, processing, or issuance of any permits for signs exceeding 200 square feet in aggregate sign area or 30 feet in height or billboards pending a study and review of the sign regulations.[30]  (Doc. 59, Ex. C).  As testified by Paula Harvey, the County's Zoning Administrator, the County hired consultants to aid in this process.  (Doc. 59, Ex. A).  The new sign regulations were enacted on November 9, 2004.

Aside from the inferences that one may draw surrounding the timing of these events, Maverick has submitted no evidence that the County's reason for reassessing the old sign regulations in November 2003 was targeted at this suit.

Upon consideration, I conclude that the County did not act in bad faith in denying Maverick's applications for prohibited billboard and/or off-site signs.  It is undisputed that, at the time Maverick's permit applications were submitted, the old sign regulations prohibited such, and Plaintiff does not contend otherwise.  While the County's timing in enacting the new sign regulations and asserting a mootness defense are arguably suspect, when the circumstances are considered as a whole, there was no bad faith as such is defined in this area.

---

[30]In June 2004, this was extended by the passage of Ordinance 04-34.  (Doc. 59, Ex. B).

Off-site signs are essentially barred under both the old and new regulations.  By the Defendant's showing, the new regulations were the product of a year's work at the direction of the County's Board of County Commissioners.  While Plaintiff claims to be the target of the effort, there is no clear showing that the new sign regulations were sought or adopted with the goal of preventing Plaintiff alone from obtaining sign permits or ending this litigation.  Even if Plaintiff's suit was one motivating factor for the repeal of the old regulations and the adoption of new regulations, it does not follow in this case that there was bad faith.[31]  A plausible conclusion in the given circumstances is that the County, faced with objections to its old sign regulations, did "what it should have done: it amended the [regulations] to eliminate constitutionally questionable provisions."  Coral Springs St. Sys., Inc., 371 F.3d at 1339.

On the other hand, I find that Plaintiff is correct that their claim for damages precludes a finding of mootness as to the surviving claims.  "[W]hen a plaintiff requests damages, as opposed to only declaratory or injunctive relief, changes to or repeal of the challenged ordinance may not necessarily moot the plaintiff's constitutional challenge to that ordinance." Crown Media, LLC, 380 F.3d at 1325; see also Clearwater, 351 F.3d at 1119 (concluding that constitutional challenge to sign ordinance was not moot even though ordinance was repealed because plaintiff requested damages).  Here, Plaintiffs seek compensatory damages under § 1983 as to each count in the Amended Complaint.  See (Doc. 84).  Additionally, because

---

[31]While Plaintiffs' reliance on National Advertising Co. v. City of Ft. Lauderdale, 8 F.3d 36 (11th Cir., Oct. 26, 1993) (unpublished table decision No. 92-4750), is not wholly unpersuasive, I find the facts of that case sufficiently distinguishable from the facts presented here.

Plaintiff also seeks "such other and further relief as the Court may deem just and equitable," (Doc. 84 at 34), the Amended Complaint is fairly construed as seeking and preserving a claim for nominal damages.[32]  Consequently, Plaintiff's claim for damages saves from mootness its claims in those counts for which it has standing to contest the constitutionality of the old sign regulations and Defendant make no dispositive showing otherwise.  See Crown Media, LLC, 380 F.3d at 1325; Clearwater, 351 F.3d at 1119; Naturist Soc'y, Inc., 958 F.2d at 1519.

In light of the above, the substantive constitutional challenges that remain are those alleged in Counts One, Two, Six, Seven, Eight, and Eleven of Plaintiffs' Amended Complaint as they relate to the express prohibitions on off-site signs and billboards contained in § 7.02.02(P) and (Q) of the old sign regulations and to the extent implicated, the definitions of both.

---

[32]Where a plaintiff establishes a violation of a fundamental constitutional right but is unable to prove actual injury sufficient to entitle him to compensatory damages, an award of nominal damages is appropriate.  Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003) (citing Carey v. Piphus, 435 U.S. 247, 255 (1978)).  This rationale applies in the context of a First Amendment violation.  KH Outdoor, LLC v. City of Trussville, 465 F.3d 1256, 1261 (11th Cir. 2006) (citing Familias Unidas v. Briscoe, 619 F.2d 391, 402 (5th Cir. 1980)).  Thus, while Plaintiff is barred from collecting § 1983 damages on its facial challenges as such are available only for violations of a party's own constitutional rights, see Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 309-10 (1986); Tanner 451 F.3d at 786, an award of nominal damages may be appropriate in a First Amendment overbreadth case.  See KH Outdoor, LLC, 465 F.3d at 1261.

IV.

A.

Generally, when evaluating the constitutionality of an ordinance or regulation restraining or regulating speech, the starting point is determining whether the ordinance or regulation is content-based or content-neutral, and then, based on the answer to that question, to apply the proper level of scrutiny.  Ladue, 512 U.S. at 58; Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 258 (11th Cir. 2005) (quoting Burk v. Augusta-Richmond County, 365 F.3d 1247, 1251 (11th Cir. 2004)).  If the ordinance is a content-neutral time, place and manner restriction, it is subject to intermediate scrutiny, that is, it must not restrict speech substantially more than necessary to further a legitimate government interest and it must leave open adequate alternative channels of communication.  Solantic, 410 F.3d at 1258.  If the ordinance is content-based, it is subject to strict scrutiny, that is, it is constitutional only if it constitutes the least restrictive means of advancing a compelling government interest.  Id; Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).  "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content-based.  On the other hand, a content-neutral ordinance is one that 'places no restrictions on . . . either a particular viewpoint or any subject matter that may be discussed.'"  Solantic, 410 at 1259 (citations omitted).

43

Plaintiff argues broadly that the old sign regulations, on their face, were repeatedly content-based and thus an impermissible time, place and manner regulation.[33]  (Doc. 97 at 17). It urges that the Eleventh Circuit's decision in Burk, supra, and Café Erotica of Fla., Inc. v. St. Johns County, 360 F.3d 1274 (11th Cir. 2004), confirm its position that the old regulations were content-based.  The County counters that the portions of the old sign regulations that Maverick has standing to challenge, those involving off-site signs and billboards, were valid, content-neutral regulations.  I agree.  Here, the prohibitions on off-site signs and billboards under § 7.02.02 (P), (Q) of the old sign regulations did not regulate expression on the basis of content as in Burk, nor did they impermissibly discriminate between off-site signs or billboards containing non-commercial or political messages and those containing commercial messages as in Café Erotica.

When fairly considered, the prohibitions on off-site signs and billboards under § 7.02.02 (P), (Q) of the old sign regulations were content-neutral.  Those provisions permissibly regulated signs based on the location and size of the signs and they applied equally to all billboard and off-site sign applicants without reference to the content of the sign or the views expressed therein.  See Messer v. City of Douglasville, Ga., 975 F.2d 1505, 1509

---

[33]In addition to the prohibition against off-site signs, Plaintiff complains that various other sections of the old regulations are unconstitutional content-based provisions.  See (Docs. 93 at 3-5, 97 at 17-20) (citing to, among other sections, §§ 7.01.00(C), 7.01.00(D), 7.01.00(K), 7.01.00(L), 7.01.00(R), 7.02.02(B), 7.02.02(D), 7.02.02(R)(1), 7.03.02(D), 7.05.02(B)(3), 7.05.02(B)(6)).  Indeed, the County appears to concede as much, at least with regards to the flag exemptions and the prohibition against obscene messages.  However, Plaintiff fails to demonstrate standing to challenge those provisions as it is unable to demonstrate an injury in fact or redressability.

(11th Cir. 1992).  In practice, the content of the message had no bearing on the granting of a

permit.  As the process was described by the County's employee, Ms. King, when she

processed sign applications for the County she did "not consider the content or wording of a

proposed sign, other than to ascertain if it pertain[ed] to an on-premises commercial or non-

commercial activity or an off-premise activity.  Even then, I never make a decision based on

the viewpoint of the message."  Aff. King (Doc. 47, ¶ 4).  Plaintiff makes no contrary

showing.  Additionally, the principle justification for the County's ban of billboard and off-

site sign, i.e., traffic safety and aesthetics, see § 7.00.02, also supports a finding of content-

neutrality as such has nothing to do with content.  See Ward, 491 U.S. at 791-92; see also

Granite State Outdoor Adver., Inc. v. City of St. Petersburg, Fla., 348 F.3d 1278, 1281 (11th

Cir. 2003).

I also find that the provisions were narrowly tailored.  A regulation is narrowly tailored

if it promotes a substantial government interest without burdening substantially more speech

than is necessary.  Ward, 491 U.S. at 799.  The County's interest in traffic safety and

aesthetics are sufficiently substantial.  See Metromedia, 453 U.S. at 511-12 (finding that

traffic safety and appearance of city were substantial government goals); Vincent, 466 U.S. at

804 (holding that a city's aesthetic interests were sufficiently substantial to provide an

acceptable justification for a content-neutral prohibition against billboards); Southlake

Property Assocs., Ltd. v. City of Morrow, Ga., 112 F.3d 1114, 1116 (11th Cir. 1997).  Further,

the challenged provisions are not overly restrictive.  Indeed, as discussed below, the

regulations were under inclusive.  Finally, they left open ample alternative channels of

communication in the form of on-premise communication.  See Metromedia, 453 U.S. at 511-12; Advantage Adver., LLC, 2006 WL 2344957, * 3.

B.

The regulation of billboards is governed by the Court's decision in Metromedia.[34] Café Erotica, 360 F.3d at 1285.  "Metromedia instructs courts to employ one of two analytical frameworks, depending on whether the restriction is of commercial or non-commercial speech."  Id. (citing Metromedia, 453 U.S. at 504-05.).  The distinction pertains because the Supreme Court has held that, "[t]he Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed expression.  The protection available for a particular commercial expression turns on the nature both of the expression and of the governmental interests served by it regulation."  Metromedia, 453 U.S. at 507 (citing Central Hudson, 447 U.S. at 562-63).  "Although the city may distinguish between the relative value of different categories of commercial speech, the city does not have the same range of choice in the area of non-commercial speech to evaluate the strengths of, or distinguish between, various communicative interests."  Id. at 514.

In determining the validity of governmental restrictions on commercial speech, the Supreme Court has adopted a four-part test.  Thus, the First Amendment protects commercial speech (1) only if that speech concerns lawful activity and is not misleading, (2) the restriction

_____

[34]Although Metromedia did not result in a majority opinion, the Eleventh Circuit has followed the plurality's reasoning in its own decisions.  See, e.g., Solantic, 410 F.3d at 1261-62; Coral Springs St. Sys., Inc., 371 F.3d at 1343-44; Café Erotica, 360 F.3d at 1290; Dimmitt v. City of Clearwater, 985 F.2d 1565, 1569-70 (11th Cir. 1993).

on commercial speech seeks to implement a substantial governmental interest, (3) it directly advances that interest, and (4) it reaches no further than necessary to accomplish the given objective. Metromedia, 453 U.S. at 507 (citing Central Hudson, 447 U.S. at 564); Café Erotica, 360 F.3d at 1286-87. Here, Maverick argues broadly that the old sign regulations are unconstitutional because they fail the third and fourth prongs of the Central Hudson test. (Doc. 93 at 8-13). While Maverick's argument here is quite expansive, for reasons set forth above, the discussion is limited to the import of the offsite sign and billboard regulations.

As for the first two prongs of the Central Hudson test, it is undisputed that Plaintiff's speech merits First Amendment protection as it concerned lawful activity and there is no indication of that it was misleading. Further, Maverick neither alleges nor argues that the County's interest in public safety and aesthetics are not substantial. Indeed, after Metromedia, there is little doubt that such purposes constitute substantial government interests. See Metromedia, 453 U.S. at 507-08 (providing that there could be no "substantial doubt" that the interests of traffic safety and aesthetics are substantial governmental goals). Maverick, however, does challenge that the County cannot satisfy the third and fourth prongs of the test.

By the third prong, the County must demonstrate that its regulation directly advances the substantial interests. Here, one stated purpose of the old sign regulations was to prohibit the future erection, placement or location of offsite signs and billboards determined to be detrimental to the aesthetic sense and public health, safety, and general welfare of the citizens. See § 7.00.02. Despite Maverick's vague protests to the contrary, the Supreme Court has recognized that it is permissible for trial courts to defer to the "accumulated common-sense

47

judgments of local lawmakers" that billboards are real and substantial hazards to traffic safety

and that billboards can be perceived as an aesthetic harm.  See Metromedia, 453 U.S. at 509-

10.  Additionally, the Court has held that the prohibition on off-site advertising is directly

related to those stated objectives.[35]  Id. at 511-12.  Here, Plaintiff presents no basis for the

court to second guess the stated reasons for the County's restrictions on billboards and off-site

advertising.  Thus, while the County's findings are minimal in this regard, they are sufficient

and legitimately advanced through its prohibition of off-site signs and billboards.

Regarding the fourth prong, that the ordinance reaches no further than necessary to

accomplish the given objective, the plurality in Metromedia found there to be "little

controversy" over the fact that the ordinance there at issue satisfied this prong.  Id. at 507-08.

To this end, the Supreme Court stated:

> [W]e reject appellants' claim that the ordinance is broader than
> necessary and, therefore fails the fourth part of the Central
> Hudson test.  If the city has a sufficient basis for believing that
> billboards are traffic hazards and are unattractive, then
> obviously the most direct and perhaps the only effective

---

[35]According to the plurality, the conclusion is undiminished by the fact that the ordinance may be under inclusive in that it permits forms of onsite advertising while banning offsite signs, because a city may appropriately believe that offsite advertising, with its periodically changing content, presents a more acute problem than does onsite advertising and it may chose to value one type of commercial speech over another in the interest of traffic safety and aesthetics.  Metromedia, 453 U.S. at 511-12.

The same rationale would appear to resolve any First Amendment issue over whether the County's stated interests are undermined by the settlement agreements it reached with Clear Channel and Viacom by which those companies were permitted to continue to post billboards and relocate the same as long as the number of such postings did not exceed those permitted in 1985 before the County sought to regulate these signs.  As urged by the County, the Supreme Court does not "require that the government make progress on every front before it makes progress on any front."  U.S. v. Edge Broadcasting Co., 509 U.S. 418, 434 (1993).

48

> approach to solving the problems they create is to prohibit them.
> The city has gone no further than necessary in seeking to meet
> its ends.  Indeed, it has stopped short of fully accomplishing its
> ends; it has not prohibited billboards, but allows onsite
> advertising and some other specifically excepted signs.

Id. at 508.  The conclusion is equally applicable here.  A city may choose to conclude that

some commercial interests outweigh municipal interests in this context and offsite

commercial billboards may be prohibited while onsite commercial billboards are not.  Here,

the old sign regulations are under inclusive in that they permitted onsite signs but not offsite

signs and exempted some signs or permitted other offsite signs subject to certain restrictions.

Under Metromedia, the County could make such value judgments about commercial speech

without running afoul of the First and Fourteenth Amendments.  Consequently, I conclude

that sections 7.02.02 (P), (Q) of the old sign regulations meet the standards of Central Hudson

and did not constitute unconstitutional restrictions on commercial speech.

### C.

Insofar as Plaintiff argues that the old sign regulations are per se unconstitutional

because they favored commercial speech over non-commercial speech, particularly as related

to off-site signs, the argument fails.  While the provisions banning off-site signs and billboard

signs are vague as to their affect on such signs containing non-commercial messages, the

Eleventh Circuit has held under similar regulations that "non-commercial messages are

inherently onsite," and "[t]he definition of billboard as an offsite advertising sign does not

include non-commercial speech. . . ."  Coral Springs St. Sys., Inc., 371 F.3d at1344 (citing

Southlake Property Assocs., Ltd., 112 F.3d at 1117).  Because the old sign regulations defined

an off-site sign as "[a]ny sign upon which advertising or any other matter may be displayed, advertising goods, services or other things not sold or available upon the parcel or only incidentally available where the sign is located," see (Doc. 99, Ex. D at 29), and a billboard sign as, "[a] sign . . . upon which advertising or other matter may be displayed promoting goods, services or other things not sold or available upon the site where the sign is located. . . . ," see id. at 9-10, the regulations are appropriately read to restrict only commercial speech. Thus, these provisions of the County's old sign regulations did not favor commercial over non-commercial speech because the prohibitions on off-site signs and billboards did not apply to non-commercial speech. See Coral Springs St. Sys., Inc., 371 F.3d at 1344 (stating that, "according to the law of this Circuit, non-commercial messages are by definition onsite signs and therefore [are] certainly not treated unfavorably compared with other signs."); Southlake Property Assocs., Ltd., 112 F.3d at 1119 (providing that where billboard is defined as an offsite advertising sign, definition does not reach non-commercial speech as such speech is always onsite); Messer, 975 F.2d at 1509-10. Stated otherwise, the prohibitions on off-site signs and billboards did not apply to signs having non-commercial messages, and contrary to Maverick's assertion, the expression of commercial speech was therefore more restricted than non-commercial speech in the old regulations.

D.

In Count Eight, Plaintiff claims that the provisions in the old sign regulations that prohibit off-site signs and billboards fail strict scrutiny. As indicated above, because those

sections are not content-based restrictions on [non-commercial] speech, they are not subject to strict scrutiny.

E.

As for the equal protection claims, Plaintiff argues in its motion that certain provisions in the old sign regulations favored certain charities, organizations and businesses such as tourist destinations by permitting their posting of offsite signs (e.g., § 7.04.02) while at the same time denying other commercial businesses the same opportunity.  It urges further that the County's agreement to permit Clear Channel and Viacom the right to continue "eternally" to erect billboards and off-site signs identical in all respects to those applied for by Maverick but denied it is a violation of equal protection.[36]  (Doc. 93 at 17-18); see also (Doc. 84, ¶¶ 20, 103).  The County urges the opposite conclusion.  It argues that Maverick offers no evidence of intentional discrimination or facts or circumstances establishing that it has been denied equal protection as it is unable to establish it is similarly situated to those entities with which the County entered settlement agreements.  More particularly, the County contends that

_____

[36]As Maverick now presents these claims, they were raised in Counts Nine and Eleven of the Amended Complaint.  By my reading, Count Nine sought to raise an issue under the First and Fourteenth Amendments.  (Doc. 84 at ¶ 95).  In its motion, Maverick argues the language from Count Nine as an equal protection violation, thus it asserts that, "[t]he Sign Ordinance exempts from its restrictions, or otherwise allows, signs posted by certain businesses and organizations and not by others.  As Plaintiffs have demonstrated in previous submissions to the Court, politicians, favored charities, favored organizations, and favored businesses, such as "tourist destinations," are allowed more freedom to post sings than other similarly situated individuals or entities. . . . As a result, groups that County officials favor are given special status to post signs."  (Doc. 93 at 17).  As discussed above, I have found that Plaintiff has no standing to raise Count Nine, but can raise an equal protection argument.  Giving the Plaintiff the benefit of the doubt that its allegations in Count Nine form a part of its equal protection claim, the matter will be addressed further.

Maverick is not similarly situated with Clear Channel, Viacom, or any other entity with which it reached settlement agreements in disputes arising under the old sign regulations because those companies had lawfully placed billboards prior to the 1985 enactment of the sign regulations and Maverick did not.  The County maintains that it did nothing more than agree to grandfather in those companies who lawfully had billboards prior to the enactment of the old regulation, a practice recognized by the courts as consistent with principles of equal protection.  The County maintains that absent a showing of suspect classification, the matter is reviewed under the rationale basis standard.  Plaintiff vaguely argues that this equal protection analysis is subject to strict scrutiny.

The Equal Protection Clause requires that the government treat similarly situated individuals in a like manner.  U.S. Const. Amend. XIV, § 1; City of Cleburne v. Cleburne Living Center, Inc., 473 U. S. 432, 439 (1985).  As a general rule, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  Cleburne, 473 U.S. at 440.  When "social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude."  Id.  This general rule gives way, however, "when the statute classifies by [gender,] race, alienage, or national origin," and because such factors "are seldom relevant to the achievement of any legitimate state interest," such laws are subject "to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest."  Id.  Thus, if legislation classifies people in such a way that they receive different treatment under the law, the degree of scrutiny the court applies to the legislation depends on the basis for the classification.  Gary v. City of

Warner Robins, Ga., 311 F.3d 1334, 1337 (11th Cir. 2002).  Where a fundamental right or a

suspect class is involved, the court reviews the classification with strict scrutiny.  Id.  On the

other hand, "[i]f an ordinance does not infringe upon a fundamental right or target a protected

class, equal protection claims relating to it are judged under the rational basis test;

specifically, the ordinance must be rationally related to the achievement of a legitimate

government purpose."  Id. (quoting Joel v. City of Orlando, 232 F.3d 1353, 1357 (11th Cir.

2000)).

Viewing the evidence in the light most favorable to Plaintiff, it offers no facts or legal

argument to support the vague assertion that the old sign regulations are facially

unconstitutional under the Equal Protection Clause.  As discussed above in the section on

standing, there is no evidence that Plaintiff ever sought to post an off-site sign of the type

complained of here, and it can claim no injury by reason of such provisions.  Even assuming

that it may mount an equal protection challenge, the challenge must fail.  Thus, accepting for

arguments sake that the regulation classified persons in some manner, absent any evidence of

discriminatory intent, such classification is subject to intermediate or lesser scrutiny rather

than strict scrutiny in the circumstances of this case.  See Dunagin v. City of Oxford, Miss.,

718 F.2d 738, 752 (5th Cir. 1983) (explaining that, ". . . parties cannot insist on strict scrutiny

merely by asserting a First Amendment right that the court ultimately finds not to be violated,"

and noting that, " . . in all cases commercial speech is entitled to only a limited measure of

protection under a different standard of review"); Jones Intercable of San Diego, Inc. v. City

of Chula Vista, 80 F.3d 320, 327 (9th Cir. 1996) (rejecting argument that content-neutral

ordinance attacked on equal protection grounds be reviewed under strict scrutiny simply because First Amendment rights were implicated); Taxi Cabvertising, Inc. v. City of Myrtle Beach, No. 01-1525, 2002 WL 23165, * 2, (4th Cir. 2002) (finding strict scrutiny inapplicable because ordinance was content-neutral and applying rational basis) (unpublished).  As the findings made above suggest, the provisions of the old regulations at issue are rationally related to the achievement of a legitimate government purpose.  To this end, the County has already demonstrated a substantial interest that was directly advanced by the old sign regulations.  Metromedia further teaches that a municipality is permitted to judge the value of different types of commercial speech and regulate them accordingly without violating the First Amendment as long as the regulation satisfies the Central Hudson test, and a municipality may afford non-commercial speech an advantage over commercial speech under a content-neutral scheme.  Metromedia, 453 U.S. at 512.  In the absence of any evidence of intentional discrimination or other facts to support a discriminatory animus, Maverick's purported facial challenge to the old sign regulations on equal protection grounds fails.

As for Maverick's as-applied challenge, I conclude there is no genuine issue of material fact with respect to whether Maverick is similarly situated to those entities with which the County entered settlement agreements.  It is not, and its claim on this basis fails as well.  While Plaintiff suggests it is similarly situated to Clear Channel and Viacom and any other entities that have entered into settlement agreements with the County, it is undisputed that those entities had lawful billboards prior to the enactment of the sign regulations in 1985 (which first banned billboards), and that Plaintiff did not.  In fact, Maverick did not exist in

54

1985.  In any event, by Mr. Bateman's testimony, he was unaware of any billboards that were not erected pursuant to a settlement agreement and neither he nor Maverick took any steps to legally challenge the validity of the settlement agreements.  The analysis on this claim need go no further.[37]  Accordingly, Plaintiff's as-applied challenge must fail as well.

V.

In sum, I conclude that the provisions of the old sign regulations that prohibited billboards and off-site signs did not violate Maverick's First and Fourteenth Amendment rights.  Those prohibitions were content-neutral and imposed reasonable time, place, and manner restrictions; did not favor commercial speech over non-commercial speech or impermissibly restrict non-commercial speech; and satisfied the test for regulating commercial speech under <u>Central Hudson</u>.  I conclude further that Maverick's rights to equal protection were not violated.  Accordingly, it is **RECOMMENDED** that **Plaintiff's Motion for Partial Summary Judgment** (Doc. 91) be **DENIED** and **Hillsborough County's Motion for Summary Judgment Against Plaintiff's Amended Complaint** (Doc. 92) be **GRANTED**.

Respectfully submitted on this
9th day of March 2007.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

---

[37]I do not read Plaintiff's equal protection claim as challenging the County's actions in allowing grand-fathering.

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a <u>de</u> <u>novo</u> determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; <u>see</u> <u>also</u> Fed. R. Civ. P. 6 and M.D. Fla. R. 4.20.


Copies to:
United States District Judge
Counsel of Record